UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                 )
ELTON WILLIAMS,                  )
                                 )
          Plaintiff,             )
                                 )
     v.                          )
                                 )  Civ. Action No. 14-972 (EGS)
                                 )
CAROLYN W. COLVIN,               )
Acting Commissioner of           )
Social Security,                 )
                                 )
          Defendant.             )
_____)
```

**MEMORANDUM OPINION**

Plaintiff Elton Williams ("Mr. Williams") brings this action for judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying his claims for Supplemental Security Income Benefits. Pending before the Court are Mr. Williams's Motion for Judgment of Reversal and the Commissioner's Motion for Judgment of Affirmance. Docket Nos. 8, 9. Upon consideration of the parties' submissions, the administrative record, the governing statutory and case law, and for the following reasons, Mr. Williams's Motion is **GRANTED;** the Commissioner's Motion is **DENIED;** and this action is remanded to the Commissioner for further proceedings in accordance with this Memorandum Opinion.

## I. BACKGROUND

### A. Factual Background

Elton Williams, born October 18, 1955, is a veteran seeking Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 301 *et seq.* ("the Act"). Mr. Williams has a high school education and no past relevant work experience. Administrative Record ("AR") at 53-54. Mr. Williams alleges that he is unable to work due to mental health issues including auditory hallucinations. *Id.* at 62.

On April 29, 2011, Mr. Williams was admitted to the Veteran's Administration ("VA") hospital in Washington, DC. AR at 494. He reported symptoms consistent with depression and auditory hallucinations instructing him to commit suicide. *Id.* at 499. Mr. Williams was hospitalized at the VA until May 17, 2011. *Id.* at 538. Following his release, he was monitored by the VA's suicide prevention program. *Id.* at 557. Mr. Williams subsequently reported to the VA for bi-weekly injections of risperidone, a psychotropic medication, and to participate in group counseling. *Id.* at 571, 589. The risperidone injections helped reduce his auditory hallucinations to non-violent whispers. *Id.* at 59-60, 571. On September 19, 2012, upon a determination that he was no longer considered a high risk, Mr. Williams was released from the suicide prevention program. *Id.* at 619.

Mr. Williams lives with his niece in Southeast Washington, DC. AR at 53, 60. His daily activities include preparing food for himself, straitening up the house, and running small errands for his niece. *Id.* at 60. Mr. Williams is unable to drive due to poor vision, but is able to walk and use public transportation. *Id.* at 60-61.

**B. Procedural History**

Mr. Williams filed for SSI benefits on February 2, 2011, alleging disability due to mood swings, paranoia, and bipolar disorder.[1] AR at 224. The Commissioner denied Mr. Williams's claims on August 19, 2011 and denied his request for reconsideration on January 12, 2012. *Id.* at 95-97, 102-05. At Mr. Williams's request, an Administrative Law Judge ("ALJ") held a hearing on his application on April 22, 2013. AR at 49-71. On April 26, 2013, the ALJ issued a decision finding that Mr. Williams was not disabled at any time through the date of his decision. *Id.* at 28. Mr. Williams's request for Social Security Appeals Council review was denied on March 20, 2014, at which time the ALJ's determination became the "final decision" of the Commissioner for the purposes of judicial review. *Id.* at 1-5; *see also* 42 U.S.C. § 405(g). This lawsuit followed.

---

[1] Mr. Williams initially also filed for Disability Insurance Benefits ("DIB") pursuant to Title II of the Act, but subsequently withdrew his request. AR at 12.

## II. DISCUSSION

### A. Standard of Review

Section 405(g) of the Social Security Act provides for judicial review of "final decisions" of the Commissioner of Social Security. 42 U.S.C. § 405(g). On review, the court must uphold the Commissioner's determination where it is "supported by substantial evidence" and "not tainted by an error of law." *Porter v. Colvin*, 951 F. Supp. 2d 125, 129 (2013) (citing *Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C. Cir. 1987)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brown v. Bowen*, 794 F.2d 703, 705 (D.C. Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"Even if supported by substantial evidence, however, the court will not uphold the Commissioner's findings if the Commissioner reached them by applying an erroneous legal standard." *Jackson v. Barnhart*, 271 F. Supp. 2d 30, 33 (D.D.C. 2002); *see also Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law."). To determine whether the Commissioner's decision is free from legal error and supported by substantial evidence, the court must "carefully scrutinize the entire record," but "may not reweigh the evidence and replace the [Commissioner's]

judgment regarding the weight of the evidence with its own." *Jackson,* 271 F. Supp. 2d 30, 34 (citing *Davis v. Heckler*, 556 F. Supp. 1193, 1195 (D.D.C. 1983)).

### B. Legal Framework

To qualify for Supplemental Security Income ("SSI") under Title XVI of the Act, the applicant must establish that he is "disabled" as defined in the Act. 42 U.S.C. § 1382(a)(1). "Disability" refers to the inability to "engage in any substantial gainful activity by reason for any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 1382c(a)(3)(A).

The Commissioner has established a five-step sequential evaluation process for assessing a claimant's alleged disability. *See* 20 C.F.R. § 416.920. The claimant bears the burden of proof during the first four steps. *Id.* First, the claimant must demonstrate that he is not presently engaged in "substantial gainful work." 20 C.F.R. § 416.920(b). Second, a claimant must show that he has a "severe impairment" that "significantly limits [his] physical or mental ability to do basic activities." 20 C.F.R. § 416.920(c). Third, if the claimant suffers from an impairment that meets or equals an impairment listed in Appendix 1 to the Commissioner's

regulations, he is deemed disabled, and the inquiry ends. 20 C.F.R. § 416.920(d).

If the impairment is not one the regulations presume to be disabling, however, then the evaluation continues to a fourth step, which requires the claimant to show that he is incapable of performing work that he has done in the past. 20 C.F.R. § 416.920(e). Once the claimant has carried his burden on the first four steps, the burden shifts to the Commissioner on step five to demonstrate that the claimant is able to perform "other work" based on a consideration of his "residual functional capacity" ("RFC"), age, education and past work experience. 20 C.F.R. § 416.920(f); *see also Brown*, 794 F.2d at 706; *Davis v. Astrue*, 602 F. Supp. 2d 214, 217 (D.D.C. 2009).

### C. The Commissioner's Decision

In this case, the Commissioner, through the ALJ, applied the five-step analysis and determined, first, that Mr. Williams had not engaged in substantial gainful activity during the relevant time period. AR at 14. Second, the ALJ found that Mr. Williams had "severe impairments" within the meaning of the regulations – specifically, an affective disorder, schizophrenia, and visual disturbance. *Id.* at 14. At step 3 of the analysis, the ALJ found that Mr. Williams's impairments, while severe, were not listed in Appendix 1, nor were they "medically equal" to any of the presumptively disabling

impairments. *Id.* at 15. At step 4, the ALJ determined that Mr. Williams had no past relevant work experience. *Id.* at 27.

Finally, at step 5, upon consideration of his age, education, work experience, and RFC, the ALJ concluded that Mr. Williams could perform jobs that exist in significant numbers in the national economy. *Id.* In determining Mr. Williams's RFC, the ALJ found that while Mr. Williams had the RFC to perform a full range of work at all exertional levels, he possessed the following "nonexertional limitations": (1) Mr. Williams should not work around dangerous conditions such as machinery or unprotected heights; (2) Mr. Williams can perform tasks requiring the ability to remember, understand, and carry out simple instructions, but cannot perform complex tasks; (3) Mr. Williams can tolerate only occasional contact with coworkers and the general public; and (4) Mr. Williams's limitations in concentration and focus may cause him to be off task five percent of the workday. *Id.* at 16. The ALJ concluded that Mr. Williams was capable of performing work as a janitor, stock clerk, or packer. *Id.* at 26-27.

### D. Mr. Williams's Motion for Judgment of Reversal

Mr. Williams argues that the Commissioner's determination should be reversed due to an erroneous calculation of his RFC. Pl.'s Mot. Judg. Rev., Docket No. 8-1 at 3. Mr. Williams alleges that the ALJ failed to evaluate or consider the opinion of Dr.

Sud, one of Mr. Williams's treating physicians, who concluded that Mr. Williams was unable to handle stress as his psychotic symptoms could quickly worsen when stressed. *Id.* at 6. Mr. Williams also contends that the ALJ failed to explain how the evidence supports his RFC assessment and that the ALJ improperly relied on Mr. Williams's Global Assessment of Functioning ("GAF") scores in determining that he was not disabled. *Id.* at 11. Each of Mr. Williams's arguments will be addressed in turn.

### 1. The ALJ Erred in Not Considering the Opinion of Dr. Sud

The D.C. Circuit has made clear that "[b]ecause a claimant's treating physicians have great familiarity with his condition, their reports must be accorded substantial weight." *Williams v. Shalala*, 997 F.2d 1494, 1498 (D.C. Cir. 1993); *see also Gilliland v. Colvin*, 67 F. Supp. 3d 308, 314 (D.D.C. 2014). "A treating physician's report is binding on the fact-finder unless contradicted by substantial evidence." *Butler v. Barnhart*, 353 F.3d 992, 1003 (D.C. Cir. 2004). Thus, an "ALJ who rejects the opinion of a treating physician must explain his or her reasons for doing so." *Gilliand*, 67 F.2d at 1498 (internal citations and quotations omitted).

Here, Mr. Williams argues that the ALJ failed to consider, let alone give substantial weight to, a form questionnaire completed by Dr. Indu Sud on August 1, 2011. Pl.'s Mot. Judg.

8

Rev., Docket No. 8-1 at 6.[2] On the form, Dr. Sud diagnosed Mr. Williams with "major depression with psychotic features." *Id.* at 527. When asked to describe the effect of this diagnosis "on [Mr. Williams's] physical/mental ability to perform work-related activities," Dr. Sud indicated that Mr. Williams was "[u]nable to handle stress, can have psychotic symptoms surface quickly when stress" [sic]. *Id.* at 528. Mr. Williams argues that by failing to mention or evaluate the opinion of one of his treating physicians, the ALJ committed reversible error. Pl.'s Mot. Judge. Rev., Docket No. 8-1 at 6. The Commissioner does not dispute that Dr. Sud was one of Mr. Williams's treating physicians, nor does the Commissioner dispute that the ALJ failed to mention or evaluate Dr. Sud's August 1, 2011 opinion, rather the Commissioner argues that this failure was harmless error and does not warrant a remand of this case. Def.'s Mot. Judg. Aff., Docket No. 9 at 11. The Commissioner argues that there is no need to remand the case because the three potential jobs identified for Mr. Williams during Step five of the ALJ's analysis – janitor, stock clerk, and packer – are all "low stress" jobs. *Id.* at 13-14.

---

[2] The form is a standard questionnaire prepared by the D.C. Rehabilitation Services Administration: Disability Determination Division. AR at 527-28.

9

The Commissioner's argument is unavailing. "[S]tress is not a characteristic of a job, but instead reflects an individual's subjective response to a particular situation." *Lancellotta v. Sec. Health & Hum. Serv.*, 806 F.2d 284, 285 (1st Cir. 1986). Indeed, "the use of the term 'low stress' is somewhat of a misnomer because stress lies in the individual not in the job." *Clifford v. Apfel*, 227 F.3d 863, 868 n.2 (7th Cir. 2000). Social Security Ruling 85-15 ("SSR 85-15") states that a person's ability to cope with stress in the workplace is a "highly individualized" condition that requires "thoroughness in evaluation on an individualized basis" *See* SSR 85-15 at *5. Moreover, any limitations created by a person's response to stress in the workplace "must be reflected in the RFC assessment." *See* SSR 85-15 at *6.

In light of this individualized inquiry, the Commissioner cannot simply declare *post hoc* that the potential work identified by the ALJ would be low stress for Mr. Williams.[3] The Commissioner's own policy statement indicates that a person's ability to handle stress must be evaluated individually and

---

[3] Further, Dr. Sud's opinion did not state that Mr. Williams could tolerate low stress work, it stated that Mr. Williams was "unable to handle stress." AR at 258. Thus, limiting Mr. Williams to "low stress" work does not sufficiently address the limitation identified by Dr. Sud.

10

reflected specifically in the individual's RFC assessment. SSR 85-15 at *5, *6.

When confronted with Dr. Sud's opinion indicating that Mr. Williams was "unable to handle stress," the ALJ had two options: (1) reject Dr. Sud's opinion and provide an explanation for that rejection, or (2) accept Dr. Sud's opinion and conduct an individualized assessment on how stress affects Mr. Williams's ability to work. The ALJ did neither.[4] Accordingly, the ALJ's decision must be vacated and remanded for further consideration of Dr. Sud's opinion in regard to Mr. Williams's ability to handle stress.

### 2. The ALJ's Decision Fails to Explain How His RFC Assessment is Supported by the Evidence

Next, Mr. Williams argues that the ALJ's decision fails to provide a "narrative discussion setting forth how the evidence supported each conclusion, citing specific medical facts and nonmedical evidence." Pl.'s Mot. Judg. Rev., Docket No 8-1 at

---

[4] Alternatively, the Commissioner argues that the ALJ's failure to consider Dr. Sud's August 11, 2011 opinion was harmless because the ALJ considered Dr. Sud's treatment notes from September 22, 2011. Def.'s Mot. Judg. Aff., Docket No. 9 at 11-12. The Commissioner notes that "[a]part from Dr. Sud's notation concerning [Mr. Williams's] ability to handle stress," the two documents from Dr. Sud are nearly identical. The Commissioner's concession swallows her argument – the two documents are different in that only the August opinion provides Dr. Sud's opinion on Mr. Williams's ability to handle stress. *Compare* AR 527-28 *with* AR 570-74. Accordingly, the case must be remanded to allow the ALJ to consider Dr. Sud's August opinion.

11

10. Specifically, Mr. Williams argues the ALJ did not explain his basis for the following findings: (1) that Mr. Williams needed to avoid dangerous conditions; (2) that Mr. Williams was limited in tasks requiring the ability to understand, remember, and carry out simple tasks; (3) that Mr. Williams could only tolerate occasional contact with coworkers, supervisors, and the general public; and (4) that Mr. Williams would be off-task for about five percent of the day. *Id.* The Commissioner counters that the evidence supports the ALJ's conclusion, and that while "the ALJ ideally might have provided additional explanation for the functional restrictions he found," any error was harmless. Def.'s Mot. Judg. Aff., Docket 9 at 16.

Social Security Ruling 96-8p ("SSR 96-8p") requires that the ALJ's narrative discussion of the claimant's RFC,

> contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate; a resolution of any inconsistencies in the evaluation as a whole; and **a logical explanation of the effects of the symptoms, . . . on the individual's ability to work.**

SSR 96-8p at *7 (emphasis added). It is insufficient for the ALJ to merely list the claimant's medical history and then conclusively state the claimant's RFC; the ALJ must "build an accurate and logical bridge from the evidence to [his]

conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006) (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)).

Here, the ALJ's decision fails to build that logical bridge. While the ALJ finds four non-exertional limitations on Mr. Williams's RFC and follows those findings with a thorough recitation of Mr. Williams's testimony and a summary of his medical history, the ALJ fails to indicate how the evidence recited supports each of his findings. Without that "logical bridge" between the evidence and the ALJ's conclusion, the Court cannot determine whether the ALJ's conclusion is supported by substantial evidence. *Lanue-Rauth*, 437 F. Supp. 2d at 68 ("Although the court defers to the ALJ's determination of facts based on substantial evidence, the court is unable to understand the ALJ's route to his conclusions from the ruling in its current form").

The Commissioner seeks to save the ALJ's decision by pointing to evidence that may have supported each of the ALJ's findings. Def.'s Mot. Judg. Aff., Docket 9 at 15. For instance, for the ALJ's first finding, the Commissioner's motion explains:

> The ALJ's conclusion that Plaintiff needed
> to avoid dangerous conditions was supported
> by Plaintiff's report that he was unable to

13

>           drive due to his poor vision (and,
>           therefore, logically would be unable to
>           perform other hazardous activities or deal
>           with other hazardous conditions).

*Id.* However, this explanation never appears in the ALJ's opinion. A reviewing court "may not accept appellate counsel's *post hoc* rationalizations for agency action." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962); *Snell v. Apfel*, 116 F.3d 128, 134 (2d Cir. 1999). Accordingly, the Commissioner's attempt to build a logical bridge *post hoc* is insufficient.

   Finally, the Commissioner argues that

>           [a]lthough the ALJ ideally might have
>           provided additional explanation for the
>           functional restrictions that he found,
>           procedural perfection in the administrative
>           proceedings is not required, and the Court
>           should not vacate the judgment of the agency
>           unless the substantial rights of a party
>           have been affected.

Def.'s Mot. Judg. Aff., Docket No. 9 at 16. The Commissioner argues there are no grounds to remand the ALJ's decision because Mr. Williams "does not point out any limitations that he believes the ALJ omitted from his RFC findings." *Id.* at 14.

   Procedural perfection is not required, but in this case, Mr. Williams has identified a limitation the ALJ failed to consider, namely, Mr. Williams's inability to handle stress. Accordingly, the ALJ's failure to set forth a narrative discussion connecting the evidence to the limitations found was

14

not harmless error. On remand, the ALJ must provide his own explanation of how the evidence supports each of his findings.

### 3. The ALJ's Use of Mr. Williams's GAF Scores Was Permissible

Finally, Mr. Williams argues that the ALJ erroneously relied on his Global Assessment of Functioning ("GAF") scores in determining that he was not disabled. Pl.s' Mot. Judg. Rev., Docket No. 8-1 at 11. The Commissioner replies that Mr. Williams's GAF scores were properly considered in conjunction with the rest of the evidence. Def.'s Mot. Judg. Aff., Docket No. 9 at 17-18.

The GAF score is a "subjective determination that represents the clinician's judgment of the individual's overall level of functioning." *Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010). The Commissioner has declined to endorse the GAF scale for "use in the Social Security and SSI disability programs," and has indicated that GAF scores have no "direct correlation to the severity requirements of the mental disorders listings." *See Wind v. Barnhart*, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (citing 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)). While an individual's GAF score is never dispositive of disability, an ALJ may consider a claimant's GAF scores as relevant evidence of the claimant's general functional

abilities. *Graham v. Astrue*, 385 F. App'x 704, 706 (9th Cir. 2010).

It was permissible for the ALJ to consider Mr. Williams's GAF scores in conjunction with the rest of the evidence. Rather than relying on the GAF scores alone, the ALJ included Mr. Williams's GAF scores as part of the discussion of his medical history. This alone is not grounds for remand. In light of the errors noted above, however, it is nonetheless necessary to remand this action to the ALJ for further proceedings.

## III. CONCLUSION

For the foregoing reasons, Mr. Williams's motion for judgment of reversal is **GRANTED;** the Commissioner's motion for judgment of affirmance is **DENIED;** and the matter is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion. A separate order accompanies this Memorandum Opinion.

**Signed:    Emmet G. Sullivan**
**            United States District Judge**
**            September 30, 2015.**